[Cite as *State v. Giarelli*, 2023-Ohio-1134.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 111525 |
| v. | : | |
| THOMAS A. GIARELLI, | : | |
| Defendant-Appellee. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** April 6, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-15-597782-C

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, Frank R. Zeleznikar, Assistant Prosecuting Attorney, *for appellant.*

Anthony J. Bondra, *for appellee.*

MARY J. BOYLE, J.:

{¶ 1} Plaintiff-appellant, the state of Ohio ("State"), has asked us to determine whether the trial court abused its discretion when it granted defendant-appellee, Thomas A. Giarelli's ("Giarelli"), Crim.R. 32.1 "Motion to Vacate Pleas to

Correct Manifest Injustice." For the reasons set forth below, we affirm and remand to the trial court for further proceedings.

## I.  Facts and Procedural History

{¶ 2}  This appeal stems from an incident that occurred on July 11, 2015, at a residence in Solon, Ohio. The incident was investigated by the Solon Police Department, who obtained written and oral statements from three alleged victims. The victims claimed they were sleeping when 5-7 people came into the house; held them up with a knife; restrained, threatened, hit, or otherwise told them not to move; and took a phone, a tablet, and some cash.

{¶ 3}  On August 18, 2015, Giarelli and four codefendants were indicted in an eight-count indictment.[1] Count 1 charged each of them with aggravated burglary, a felony of the first degree. Count 2 charged them with aggravated robbery, a felony of the first degree. Counts 3 through 5 charged the defendants with robbery, a felony of the second degree. Counts 6 through 8 charged them with kidnapping, a felony of the first degree.

{¶ 4}  At a pretrial held on October 13, 2015, Giarelli and his codefendants withdrew their previously entered not guilty pleas and pled guilty to two counts in an amended indictment: Count 1 was amended to aggravated menacing, a misdemeanor of the first degree, and Count 3 was amended to theft, a misdemeanor

---

[1] To date, no appeals have been filed by Giarelli's four codefendants.

of the first degree.  Counts 2, 4, 5, 6, 7, and 8 were nolled as to all defendants.  The
trial court stated:

> Look it, if you're expecting a lecture from me, it's not going to happen.
> I seriously suspect you-all have had lectures from people in your life
> that are more important to you than me.  I'm however going to share
> with you some advice my father gave me, and that is that you are known
> by the company you keep.  You hang around with lowlives, you're going
> to look like a lowlife to anybody on the outside looking in.  You got to
> watch yourselves.
>
> I'll tell you guys, when you look at a case that comes down from felonies
> of the first degree to misdemeanors of the first degree, you guys really
> dodged a bullet.  You really did.  Even if you went to trial, if you had to
> sit here for a week or so for a trial, you don't know what the jury's going
> to do, even if you think in your mind they can't convict me.  It's been
> known to happen.  This is a life-learning lesson, and I hope you can
> appreciate it.
>
> With that said, I don't think you guys are a menace to society.  At least
> not yet, okay?

(Oct. 13, 2015, tr. 19-20.)  Giarelli and his four codefendants were sentenced on the
same day their pleas were taken. The trial court sentenced all defendants to pay
court costs and a fine in the amount of $250.

{¶ 5}  On June 28, 2017, Giarelli, through his previous trial counsel, filed a
motion for expungement of his criminal record.  The State filed a brief in opposition
and an expungement hearing was set for September 6, 2017.

{¶ 6}  On August 21, 2020, Giarelli's trial counsel filed a "Motion to
Withdraw Guilty Plea." The motion, however, consisted of a cover page with no facts
or arguments to support the motion.  The State sought leave and filed a brief in
opposition on September 16, 2020.  A hearing was set for October 26, 2020.

**{¶ 7}** On October 26, 2020, a journal entry indicated that Giarelli's expungement hearing, scheduled that same day, was reset to November 23, 2020, and again to January 6, 2021. A subsequent expungement hearing was set for January 25, 2021. On May 5, 2021, the trial court issued a journal entry denying Giarelli's motion to withdraw his guilty plea and stated, "Motion denied on briefs submitted to the court and judge/counsel conference." In October 2021, an expungement hearing was set for December 2, 2021.

**{¶ 8}** On November 3, 2021, a new attorney for Giarelli filed a "Motion to Vacate Guilty Pleas to Correct Manifest Injustice and to Declare Thomas Giarelli Innocent of All Charges." The motion set forth facts derived from the Solon Police Department's investigation of the July 2015 incident. Giarelli asserted that warrants for falsification were issued for the three victims about one month after his plea. These warrants alleged that the victims made false statements with the purpose of misleading public officials on the same date and at the same location as the incident from which Giarelli's convictions resulted. Details from the subsequent prosecution of the victims were included. Giarelli claimed:

> "[I]t is clear and openly unjust" that the level of the alleged victims untruthfulness was never revealed to counsel for the defendants from the outset in this matter. It is obvious * * * that the Solon Police were grandstanding until the felony cases resolved before proceeding to charge the alleged victims with Falsification. If the alleged victims were promptly charged, there is a substantial likelihood this matter would not have been true billed by the grand jury.

**{¶ 9}** Giarelli further alleged he and his mother were inaccurately advised by his previous defense counsel that both charges he pled guilty to were expungable.

Giarelli also asserted he and his mother were never advised that his previous defense counsel represented one of the alleged victims in the criminal proceedings stemming from the victim's falsification charge. Lastly, Giarelli claimed he was factually innocent. These claims were supported by affidavits of Giarelli, Giarelli's mother, and one of the victims.

{¶ 10} The following exhibits were filed with Giarelli's "Motion to Vacate Guilty Pleas to Correct Manifest Injustice and to Declare Thomas Giarelli Innocent of All Charges":

– The true bill indictment for Giarelli and his four codefendants.

– The transcript from the October 2015 plea hearing.

– Written statements obtained from police on July 11, 2015, from the three victims.

– A narrative supplement to the Solon Police Department July 2015 incident report indicating: "The charges against the original five defendants has been adjudicated. Prosecutor Lon Stolarsky advised that M1 Falsification charges could be filed against the three [victims] * * * for providing verbal and written false statements related to the aggravated robbery to mislead the investigation." The narrative supplement also indicates, "On 11/11/15 I received approval from BMC to issue the arrest warrants for [the two adult victims]. Due to [one victim] being a juvenile, Detective Morar will forward the report to Cuyahoga County Juvenile Court for consideration of charges against her."

– The warrants issued for the two adult victims alleging false statements were made with the purpose of misleading public officials on the same date and at the same location as the incident from which Giarelli's convictions resulted.

– Journal entries from the criminal proceedings of the two adult victims.

  In January 2016, one adult victim pled no contest to the amended charge of obstructions of official business in violation, was found guilty, fined

$750 plus costs, and sentenced to serve 30 days in jail with 30 days suspended. That victim was represented by Giarelli's defense counsel.

In May 2016, the other adult victim pled no contest to falsification, was found guilty, fined $250 plus costs with fines and costs suspended, and ordered to serve three days in jail with three days credit given.

– A sworn affidavit of Giarelli wherein he attested, "During the course of the [July 2015] incident I never entered the home * * *. I stood outside the doorway very briefly then left the area." Giarelli also "never suggested or encouraged anyone to enter the home"; "never removed, restricted the movement of, or confined anyone at the house"; and "never took, or encouraged anyone to take any property from anyone at the house including cash, pills, drugs, a telephone or otherwise"; and "never threatened anyone at the house, or encouraged anyone else to threaten anyone at the house."

Giarelli further attested his original defense counsel told him Aggravated Menacing and Theft were expungable offenses throughout pretrial plea negotiations. Giarelli retained original defense counsel to represent him when he moved for expungement of his record and for withdrawal of his guilty pleas. He swore, "At no time prior to accepting our expungement retainer [and the retainer to file the motion to withdraw the pleas], was I told by [original defense counsel], nor did I know, that he represented [one of the adult victims] on the Falsification charges in Bedford Municipal Court stemming from this incident."

– A sworn affidavit of Giarelli's mother also attesting that throughout pretrial plea negotiations, original defense counsel advised that every charge Giarelli eventually pled guilty to was expungable. She further attested original defense counsel was retained to file the expungement and withdrawal of guilty plea motions and made no mention of his representation of one of the adult victims.

– A sworn affidavit of one of the adult victims attesting:

As far as Thomas Giarelli is concerned, despite what we initially told the investigating officers, he was not involved in any aspect of the incident. From what I recall, Thomas Giarelli did not enter the home that morning. Additionally, Thomas Giarelli, as far as I witnessed, never suggested or encouraged anyone to enter the home that

morning. At no time did Thomas Giarelli take anything from anyone, or restrict anyone's movement.

**{¶ 11}** The State filed a brief in opposition one week later. It argued Giarelli's motion was untimely, Giarelli failed to present any explanation justifying the alleged delay, and that the alleged delay adversely affects Giarelli's credibility. The State further asserted res judicata barred Giarelli from filing successive motions to withdraw his guilty pleas on issues that could have been raised in the first motion. The State also claimed Giarelli failed to demonstrate a manifest injustice occurred because 1) the pleas were voluntarily entered; 2) misinformation on future expungement possibilities did not require withdrawal; and 3) Giarelli's affidavit recounted facts that were legally sufficient to establish guilt as a getaway driver. Lastly, the State argued the motion should be denied without a hearing.

**{¶ 12}** The State included the following exhibits in support of their brief in opposition:

- The transcript from the October 2015 plea hearing.

- Portions of the Solon Police Department's July 2015 incident report indicating police suspected the victims were not telling the truth and warned the victims they could be charged if false information was provided.

- The May 2021 journal entry denying Giarelli's "Motion to Withdraw Guilty Plea."

- A narrative supplement to the Solon Police Department July 2015 incident report indicating police suspected the victims were not telling the truth and warned the victims they could be charged if false information was provided.

{¶ 13} An attorney conference was scheduled December 20, 2021. The State filed supplemental authority to the trial court on April 5, 2022. In an entry filed May 2, 2022, the trial court granted Giarelli's motion in part: "Defense motion to vacate pleas is granted. Case will be re-instated. Defense motion to declare Thomas Giarelli innocent of all charges is denied."

{¶ 14} It is from this order that the State appeals, raising the following assignment of error for review:

> **Assignment of Error:** The Trial Court erred when it granted [Giarelli]'s successive motion to withdraw guilty plea.

## II. Law and Analysis

{¶ 15} Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The rule itself does not prescribe a time limitation for the filing of a motion to withdraw a guilty plea after a sentence is imposed. Crim.R. 32.1.

{¶ 16} Manifest injustice is an extremely high standard. The Supreme Court of Ohio has defined "manifest injustice" as "a clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998). A "manifest injustice" relates to a fundamental flaw in the plea proceedings, resulting in a miscarriage of justice. *State v. Tekulve*, 188 Ohio App.3d 792, 2010-Ohio-3604, 936 N.E.2d 1030, ¶ 7 (1st Dist.), citing *Kreiner* at 208 and *State v. Smith,* 49 Ohio

St.2d 261, 264, 361 N.E.2d 1324 (1977). The term has been previously defined, but it is clear that under such standards, a postsentence withdrawal of a guilty plea is allowed only in extraordinary cases. *Smith* at 264 (holding Crim.R. 32.1 permits a defendant to withdraw his plea only in extraordinary cases); *State v. Williams*, 8th Dist. Cuyahoga No. 110941, 2022-Ohio-2043, ¶ 21 (noting manifest injustice is an extremely high standard). The defendant moving for a postsentence withdrawal of guilty plea has the burden of establishing the existence of a manifest injustice. *Smith* at paragraph one of syllabus.

{¶ 17} The decision to grant or deny a Crim.R. 32.1 motion is committed to the sound discretion of the trial court. *Smith* at paragraph two of the syllabus. "[T]he good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by the trial court." *Id*. at 264. The trial court's decision will not be reversed on appeal absent an abuse of discretion. *Id*., *citing State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). More recently, the Ohio Supreme Court explained the abuse-of-discretion standard is "'commonly employed to justify an interference by a higher court with the exercise of discretionary power by a lower court, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" *Johnson v. Abdullah*, 166

Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35, quoting *Black's Law Dictionary* 11 (2d Ed.1910).

{¶ 18} It is well-settled that when applying an abuse-of-discretion standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 566 N.E.2d 1181 (1991); *Berk v. Matthews*, 53 Ohio St.3d 161, 559 N.E.2d 1301 (1990); *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 7, citing *Marx v. Marx*, 8th Dist. Cuyahoga No. 83681, 2004-Ohio-3740; *Schumann v. Schumann*, 8th Dist. Cuyahoga Nos. 83404 and 83631, 2005-Ohio-91, ¶ 42; *Di v. Cleveland Clinic Found.*, 2016-Ohio-686, 60 N.E.3d 582, ¶ 72 (8th Dist.). Rather, a "reviewing court should be guided by a presumption that the findings of a trial court are correct * * *." *In re Jane Doe 1* at 138. *See, e.g., State v. Hale*, 8th Dist. Cuyahoga No. 100447, 2014-Ohio-3322 ("Without knowledge of * * * potentially exculpatory evidence, it cannot be said that Hale entered his plea knowingly, intelligently, and voluntarily. The trial court's decision finding that a manifest injustice was demonstrated by Hale was neither arbitrary, unreasonable, or unconscionable.").

{¶ 19} Here, Giarelli argues the following to establish the existence of a manifest injustice in his Civ.R. 32.1 motion to vacate his guilty plea:

- newly discovered exculpatory evidence;

- false information provided to police by the three alleged victims;

- subsequent prosecution of the three victims for falsification after Giarelli pled guilty and was sentenced;

– involvement of Giarelli's original defense counsel in the representation of one of the victims;

– misinformation regarding the consequences of his guilty pleas;

– effect of plea was unknown; and

– guilty plea was unknowing, involuntary, and unintelligent due to ineffective assistance of counsel.

{¶ 20} The State maintains res judicata prevented the trial court from granting a successive motion to withdraw Giarelli's guilty plea. The State argues the transcript from the October 2015 plea hearing indicates Giarelli's guilty pleas were entered into knowingly, voluntarily, and intelligently and there was no flaw in the plea proceeding that created a manifest injustice. The State also asserts newly discovered evidence or claims of innocence cannot establish a manifest injustice because Giarelli freely admitted guilt by pleading guilty and removed the issue from the case. Lastly, the State argues that any alleged expungement misinformation received from original defense counsel at the time of the plea, the existence of which was established through self-serving affidavits from Giarelli and his mother, does not require withdrawal of Giarelli's guilty pleas. And even if it did, there is nothing in the record that indicates Giarelli would not have pled guilty but for counsel's advice that both offenses were expungable.

{¶ 21} This court recognizes that the doctrine of res judicata bars all claims raised in a Crim.R. 32.1 motion that were raised or could have been raised in a prior proceeding, including a direct appeal. *See State v. Gaston*, 8th Dist. Cuyahoga No. 82628, 2003-Ohio-5825, ¶ 8, quoting *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d

233 (1996). However, we also recognize that res judicata should not defeat the ends of justice. In *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.*, 8th Dist. Cuyahoga No. 109632, 2021-Ohio-1190, ¶ 37, we held "it would be unreasonable and unjust to rigidly apply the doctrine of res judicata to prohibit the trial court from reconsidering its prior ruling in the first case." Indeed, the application of res judicata should not work as an injustice:

> [T]he doctrine of res judicata is to be applied in particular situations as fairness and justice require, *and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.*
>
> " * * *
>
> "Underlying all discussion of the problem must be the principle of fundamental fairness in the due process sense. The public policy underlying the principle of res judicata must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which to present his case. * * * "

(Emphasis and ellipsis sic.) *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 386, 653 N.E.2d 226 (1995) (Douglas, J., dissenting), quoting 46 American Jurisprudence 2d, Judgments, Section 522, at 786-787 (1994), and citing *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 202, 443 N.E.2d 978 (1983); *State ex. rel. Estate of Miles v. Piketon,* 121 Ohio St.3d 231, 2009-Ohio-786, 903 N.E.2d 311, ¶ 30 ("The binding effect of res judicata has been held not to apply when fairness and justice would not support it.").

{¶ 22} Here, Giarelli's earlier motion to withdraw his guilty pleas was prepared by his previous trial counsel and presented no arguments or evidence in support of Giarelli's position. Res judicata is the principle that a cause of action may

not be relitigated once it has been judged on its merits. Giarelli's first postsentence motion to withdraw his pleas was not judged on its merits as evidenced by the trial court's ruling that indicated the motion, a cover page without any support or basis, was denied based upon "briefs submitted to the court * * *." This is contrasted with Giarelli's second postsentence motion to vacate his guilty pleas to correct a manifest injustice, which was prepared by his new counsel and included evidence alleging Giarelli's noninvolvement in the incident; newly discovered exculpatory evidence as to the credibility of the alleged victims and veracity of their statements to police; misinformation regarding the consequences of his guilty pleas; and questionable conduct of Giarelli's trial counsel both before and after the plea hearing. Thus, in the interest of fairness and justice, res judicata is not applicable here.

{¶ 23} Turning to the trial court's ruling on Giarelli's motion to vacate his guilty pleas to correct a manifest injustice, we cannot say that the court abused its discretion. The trial court is charged with the responsibility to properly weigh the evidence, determine credibility, and apply the law. Notably, the same trial court judge presided over the entire case of Giarelli and his four codefendants from its inception, i.e., indictment, discovery, pretrials, plea and sentencing proceedings, and motion practice. The trial court judge was in the best position to balance the issues and determine whether a manifest injustice had, in fact, occurred. Based on the facts and circumstances of the underlying case, the trial court's decision to grant Giarelli's motion to vacate his guilty pleas and reinstate the case was neither arbitrary, unreasonable, or unconscionable. Nor did the decision demonstrate

perversity of will, passion, prejudice, partiality, or moral delinquency. For this court to conclude otherwise would undermine the discretion accorded to the trial court and its balancing of the evidence presented, the legal issues raised, and the credibility of those involved and the motion itself.

{¶ 24} Therefore, the State's assignment of error is overruled.

## III. Conclusion

{¶ 25} The trial court did not abuse its discretion in granting Giarelli's post-sentence Crim.R. 32.1 motion to vacate his guilty pleas. The trial judge, who presided over Giarelli's case from its onset, was in the best position to balance the credibility of the evidence, parties, and motions with the legal issues raised. We cannot say that the trial court's decision to correct this manifest injustice was arbitrary, unreasonable, unconscionable, or demonstrative of perversity of will, passion, prejudice, partiality, or moral delinquency.

{¶ 26} Accordingly, the judgment is affirmed and the matter is remanded for further proceedings.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR